**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| OHIO CASUALTY INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.  04 C 6072 |
| WHOLESALE MULCH PRODUCTS, INC., An Illinois Corporation, | ) ) | HONORABLE DAVID H. COAR |
| | ) ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

When sued by a company named Cargo Carriers, Wholesale Mulch Products, Inc. ("Defendant" or "Wholesale Mulch") tendered the defense to its insurer, Ohio Casualty Insurance Company ("Plaintiff" or "Ohio Casualty").  Ohio Casualty now comes before this Court for a declaratory judgment that it had no duty to defend Wholesale Mulch in that action. Both Parties have moved summary judgment pursuant to Federal Rules of Civil Procedure 56. For the reasons stated below, Plaintiff Ohio Casualty's motion for summary judgment is DENIED.  Defendant Wholesale Mulch's motion for summary judgment is GRANTED.


**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must set forth specific facts (a "scintilla of evidence" is insufficient) demonstrating that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 252. See also Celotex, 477 U.S. at 324. When reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).

## II.    FACTS[1]

Plaintiff Ohio Casualty is an Ohio insurance corporation with its principal place of business in Fairfield, Ohio. At all relevant times, the corporation was licensed to transact insurance business in the State of Illinois. Defendant Wholesale Mulch is an Illinois corporation that does business in Arlington Heights and Lemont, Illinois.

American National Fire Insurance Company issued its Business Pro Policy to A. Block Marketing, Inc. and Wholesale Mulch as the named insureds for the period of May 31, 2000 to May 31, 2001 (the "Policy"). The Policy provided property, general liability, crime, inland

---

[1] The following facts are undisputed and are taken from the parties' Local Rule 56.1 materials.

marine, boiler and machinery, auto, and umbrella coverage. Ohio Casualty is the successor in interest to the Policy.

Two years ago, Cargo Carriers filed suit against Wholesale Mulch in this Court. See Cargo Carriers v. Barge Terminal, et al., 04-CV-950 (N.D. Ill. filed Feb. 6, 2004). The dispute stemmed from the damage caused when Wholesale Mulch unloaded road salt from two barges owned by Cargo Carriers. Cargo Carriers alleged that Wholesale Mulch negligently operated the hydraulic backhoe used to discharge the road salt from the barges, causing property damage to the barges in the amount of $114,889.92. The lawsuit was dismissed pursuant to a stipulation of voluntary dismissal on March 7, 2005.

Wholesale Mulch tendered the defense of the underlying lawsuit to Ohio Casualty, which refused to accept the tender. Ohio Casualty cited Sections 2(g) and 2(j)(6) ("Exclusion (g)" and "Exclusion j(6)") of the Policy, which Ohio Casualty claims exclude coverage for property damage "arising out of the loading or unloading of watercraft" and property damage to property that must be restored, repaired, or replaced because Wholesale Mulch's work was incorrectly performed on it. The Policy states as follows:

**Section I - COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
*****
**2.    Exclusions**
    This insurance does not apply to:
                    *****
    g.    **Aircraft, Auto or Watercraft**
        "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."
                    *****
    j.     **Damage to Property**
        "Property damage" to:

*****

       (6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Pl.'s Statement of Material Facts in Support of its Mot. for Summ. J., Ex. C at 4. Ohio Casualty seeks a declaratory judgment as to its duty to defend Wholesale Mulch in the underlying lawsuit. At the time it moved for summary judgment, Wholesale Mulch had incurred over $9,000.00 in attorneys' fees and costs to defend the underlying lawsuit.

## III.    DISCUSSION

Ohio Casualty moves for summary judgment in its favor because, it argues, the plain and unambiguous language of the Policy excludes insurance coverage. Wholesale Products moves for summary judgment in *its* favor because, it argues (a) neither exclusion applies or (b) in the least, the possibility of coverage exists and this alone is enough to trigger Ohio Casualty's duty to defend.

### A.    Standard

Illinois law governs this action. <u>Outboard Marine Corp. v. Liberty Mutual Insurance Co.</u>, 607 N.E.2d 1204, 1212 (Ill. 1992) (internal citations omitted), sets out the applicable standard:

> To determine whether the insurer has a duty to defend the insured, the court must look to the allegations in the underlying complaint and compare these allegations to the relevant provisions of the insurance policy. If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. Refusal to defend is unjustifiable unless it is clear from the face of the underlying complaint that the facts alleged do not fall potentially within the policy's coverage.
>
> The construction of an insurance policy's provisions is a question of law. In construing an insurance policy, the court must ascertain the intent of the parties to the contract. To ascertain the meaning of the policy's words and the intent of the parties, the court must construe the policy

-4-

as a whole, with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract.  If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning.  However, if the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed in favor of the insured and against the insurer who drafted the policy.

**B.      Exclusion (g)**

Exclusion (g) does not preclude coverage in this case.  As stated above, if the words of the policy are unambiguous, the court must afford them their ordinary meaning.  Exclusion (g) unambiguously states that the insurance does not apply to property damage arising out of the use (including loading and unloading) of watercraft *owned or operated by or rented or loaned to* Wholesale Mulch.  The Parties agree that Wholesale Mulch did not own the barges that sustained damage; Cargo Carriers does.  Likewise, nothing in Ohio Casualty's pleadings and briefs or in the underlying complaint alleges that Wholesale Mulch operated, rented, borrowed, or otherwise "used" the barges within the meaning of the exclusion.  Ohio Casualty, in arguing so vigorously that the "loading and unloading" part of the exclusion applies while ignoring the requirement–in the policy *it* drafted–that the insured own, operate, rent, or borrow the watercraft at issue, has not met its burden to show that the exclusion to coverage applies.  See Johnson Press of America, Inc. v. Northern Insurance Co. of New York, 339 Ill. App. 3d 864, 887 (Ill. App. Ct. 2003) ("In Illinois, it is the insurer's burden to affirmatively demonstrate the applicability of an exclusion").

## C.  Exclusion j(6)

The Parties dispute the meaning of Exclusion j(6), which denies coverage for "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it."  Pl.'s Statement of Material Facts in Support of its Mot. for Summ. J., Ex. C at 4.

Wholesale Mulch argues that the underlying complaint does not allege that Wholesale Mulch negligently performed work on the barges.  Rather, the underlying complaint alleges that the barges were damaged while Wholesale Mulch unloaded salt.  In Wholesale Mulch's view, the "work" to which Exclusion j(6) refers, then, is that of unloading salt.  Thus, Wholesale Mulch did not perform any work on the barges themselves, but on the salt.  In doing its work of unloading salt, Wholesale Mulch allegedly incidently damaged other property (that is, the barges).

Ohio Casualty argues that the word "on" in Exclusion j(6) has a more ordinary meaning than the one advanced by Wholesale Mulch.  According to Ohio Casualty, because Wholesale Mulch already admits that it was working on and in the barges while it was unloading salt, it is plain that Wholesale Mulch caused property damage while working on property and therefore cannot be covered under the Policy.

The only thing plain, however, is that the Parties have advanced conflicting interpretations of the word "on" in Exclusion j(6).  Ohio Casualty interprets "on" to mean "located on," in which case the exclusion would apply because Wholesale Mulch's work was incorrectly performed *while Wholesale Mulch was located on* the barges.  Wholesale Mulch interprets ""on" to mean "directed towards" or "as to," in which case the exclusion would *not*

apply because Wholesale Mulch's work was not incorrectly performed *as to* the barges (Wholesale Mulch was not, for example, building or repairing the barges). Rather, Wholesale Mulch incorrectly performed its work *as to* the salt.

The Parties have not cited cases that address whether "on" in an exclusion such as j(6) means "located on" or "as to/directed towards," and the Court does not find any. In <u>Pekin Insurance Co. v. Willet</u>, 704 N.E.2d 923 (Ill. Ct. App. 1998), for example, the court did rule that an exclusion identical to Exclusion j(6) does "not exclude coverage for damage done only to the precise area of the property being worked on. Rather, the exclusion applies to property damage caused by poor workmanship." <u>Id</u>. at. 926. This ruling would ordinarily support Ohio Casualty's position, since it suggests that the exclusion is not for the precise area of property being worked on (be it salt or the barges), but for property incidently damaged by negligent work (the barges). However, the facts supporting the court's conclusion in <u>Willet</u> are distinguishable: In <u>Willet</u>, the tortfeasor was located on the property damaged (a pool) and was directing its work toward that very same property (the pool). In the instant case, Wholesale Mulch was located on the property damaged (the barges) but was directing its work toward different property (salt).

<u>State Farm Fire and Casualty Co. v. Tillerson</u>, 777 N.E.2d 986 (Ill. App. Ct. 2002), by contrast, lends support to Wholesale Mulch's position. It, too, however, fails to address the meaning of the word "on" in Exclusion j(6). The <u>State Farm</u> court considered exclusions like that of j(6) and concluded that:

> These exclusions are premised on the theory that liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business. . . . 'The risk intended to be insured is the possibility that the goods, products [,] or work of the insured, once relinquished or completed, will cause bodily injury or

damage to property other than to the product or completed work itself, and for which the insured may be found liable.'

Id. at 992 (quoting Home Indemnity Co. v. Wil-Freds, Inc., 601 N.E.2d at 281, 285 (Ill. App. Ct. 1992). This language suggests that Exclusion j(6) does not bar Wholesale Mulch from coverage when its relinquished or completed work (unloading salt) causes damage to property other than the salt itself.

The State Farm language is similar to that in Pekin Insurance Company v. Richard Marker Associates, Inc., 682 N.E.2d 362 (Ill. App. Ct. 1997). Richard Marker held that comprehensive general liability policies like the one in the instant case "do[] not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." Id. at 366 (quoting Western Casualty & Surety Co. v. Brochu, 475 N.E.2d 872, 878 (Ill. 1985). According to the court, the policies "are intended to provide coverage for injury or damage to the person or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." Id. at 365. The underlying complaint in Richard Marker alleged that faulty workmanship caused condensation to drip on and damage furniture. Because this allegation was more than a mere allegation that the work product itself (a building) was defective, the allegations potentially fell within coverage. Richard Marker supports Wholesale Mulch's argument that Exclusion j(6) would preclude coverage if Wholesale Mulch had incorrectly performed work as to the salt and damaged the salt, but not if, as here, Wholesale Mulch incorrectly performed work as to the salt but ultimately damaged the barges.

Again, however, Richard Marker does not explicitly address the conflicting interpretations of "on" offered by the Parties in the instant case. Nor does Cincinnati Insurance

<u>Co. v. Federal Insurance Co.</u>, 166 F. Supp. 2d 1172 (E.D. Mich. 2001), which would support Wholesale Mulch's position otherwise. The <u>Cincinnati</u> court considered an exclusion identical to Exclusion j(6) and concluded that "[t]he inclusion of the words 'on it' would require that the particular part in question be damaged because of incorrect performance of 'your work' on that particular part." <u>Id.</u> at 1184. The Court sided with the insured because the employee who caused the damage only touched a small motor at the time of the accident, not the axis which was the property damaged.

A final case would support Wholesale Mulch's position though it, too, does not explicitly discuss the conflicting interpretations of the word "on" the Parties have offered. In <u>Tolomeo v. Emmanuelson</u>, No. 04-C-0486, 2005 WL 1629900 (E.D. Wis. July 7, 2005), the defendant was hired to design and construct a home. Due to the defective design and construction, property was damaged. Namely, the ductwork installed in the home had to be torn out. The insurance company argued that an exclusion identical to j(6) relieved it of coverage. The court, however, ruled that the exclusion did not apply because "there [wa]s no evidence that any of [the defendant's] work was performed on the ductwork" that was damaged. <u>Id.</u> at *4. Rather, the work was performed on the house and its fixtures. <u>Id</u> at. *2. This view supports Wholesale Mulch's position that, because its work was performed as to the salt, and not the barges that were damaged, Exclusion j(6) does not preclude coverage.

These cases demonstrate that the facts alleged in the underlying complaint potentially fell within the Policy's coverage. Consequently, Ohio Casualty had a duty to defend Wholesale Mulch. <u>See</u> <u>Outboard Marine</u>, 607 N.E.2d at 1212. Furthermore, the word "on" can, as Wholesale Mulch argues, be reasonably interpreted in more than one way. Because doubts with

respect to coverage must be construed in favor of coverage, once again, Ohio Casualty had a duty to defend Wholesale Mulch.  <u>See</u> <u>Johnson Press</u>, 339 Ill. App. 3d at 887.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff Ohio Casualty's motion for summary judgment is DENIED and Defendant Wholesale Mulch's motion for summary judgment is GRANTED.  The Parties are ordered to meet and attempt to resolve by stipulation the issue of how much in the way of defense costs Ohio Casualty is obligated to pay.  Failing that, the question of damages is set for an evidentiary hearing on February 23, 2006 at 10:00 a.m.

Enter:

<u>/s/ David H. Coar</u>
David H. Coar
United States District Judge

Dated: **January 10, 2006**